**SCHOEPS v. CARMICHAEL.**

No. 12008.

United States Court of Appeals
Ninth Circuit.

Sept. 23, 1949.

---

David C. Marcus, Los Angeles, Cal., for appellant.

James M. Carter, U. S. Atty., Clyde C. Downing, Arline Martin and Ernest Tolin, Asst. U. S. Attys., Los Angeles, Cal. (Marshall Kidder, Asst. Dist. Adjudications Officer, Immig. & Naturalization Service, Los Angeles, Cal., on the brief) for appellee.

Before STEPHENS and BONE, Circuit Judges, and FEE, District Judge.

BONE, Circuit Judge.

Appellant-petitioner Schoeps was born on November 27, 1893 in Germany and was admitted to this country in 1911. He has resided here continuously from that time but has remained a citizen of Germany. He is not married and has no dependents.

Appellant admitted that while residing in New York City on or about 1923, he committed acts of a loathsome nature upon the sexual organs of a 7 year old girl. This type of conduct, clearly involving moral turpitude, is denounced as a felony under the New York Penal Law.[1] It escaped discovery until 1943, and he was never charged with or punished for this state crime. The New York statute of limitations has also barred a prosecution for this offense.[2]

In November, 1939, appellant voluntarily departed from the United States for a visit to Mexico, returning the same day.

On March 9, 1943, appellant again committed acts of sexual perversion, this time upon a 3 year old baby girl. For this offense he was arrested by the police of Los Angeles, California, and charged with lewd and lascivious conduct toward a child, this offense being a felony under California law.[3] His conduct was essentially the same, although more repulsive in nature, as the offense in New York.

Appellant freely admitted these acts of sexual perversion and also his trip to Mexico, to Immigration officials. He made two statements to them which were made under oath after the officials had identified themselves and after he had been warned that anything he said might be used in subsequent deportation or criminal proceedings against him. These statements, one made while appellant was in the custody of the Los Angeles police, the other the day following his release, were typed, signed, and each page initialed by appellant, and covered substantially the same facts. This procedure was in all respects in conformance with the applicable regulations.[4]

On March 10, 1943, while appellant was in police custody, Dr. DeRiver, a Police

1. Section 483-a of the New York Penal Law provides: "Any person of the age of eighteen years or over who carnally abuses the body, or indulges in any indecent or immoral practices with the sexual parts or organs of a child of the age of ten years or under, shall be guilty of a felony, punishable, on conviction thereof, by imprisonment for not more than ten years."

2. See New York Criminal Code, Limitations of Criminal Actions, §§ 133–144-a. Section 142 provides: "A prosecution for a felony, other than murder or kidnapping, must be commenced within five years after its commission, except where a less time is prescribed by statute. And a prosecution for a misdemeanor must be commenced within two years after its commission. L.1887, c. 412; L.1929, c. 246, § 1; L.1935, c. 308, § 2."

3. California Penal Code, § 288: "Crimes against children: Lewd or lascivious acts: Punishment. Any person who shall wilfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in part one of this code upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the State prison for a term of from one year to life." The statute of limitations of California appears to bar prosecutions for this offense after three years from the date of its commission.

4. 8 C.F.R. § 150.1. "Investigations—(a) Aliens reported, or believed, to be subject to deportation. The case of every alien reported, or believed, to be subject to arrest and deportation, shall be thoroughly investigated by such officer as may be designated for that purpose.

Psychiatrist employed by the City of Los Angeles conducted an examination of appellant, in which appellant recounted his acts of perversion in detail. He there stated that the acts of perversions involving the child in New York occurred "two or three times." The examination was made as a part of DeRiver's routine duties to investigate persons arrested on sex offenses and was recorded in DeRiver's normal report of such official investigation.

Subsequent to his release from police custody, appellant was arrested by Immigration officials and charged with being a deportable alien under authority of 8 U.S.C.A. § 155(a): " * * * any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude * * * shall, upon the warrant of the Attorney General, be taken into custody and deported. * * *"

Formal deportation hearings were held at which appellant was represented by counsel, and upon final administrative consideration appellant was ordered deported.

Appellant sought freedom from his detention by immigration authorities in an application for a writ of habeas corpus to the district court. His petition, based upon a claim of administrative error in admitting appellant's sworn statements into evidence, was denied. This appeal followed.

■ The deportation of a resident alien is not a criminal action. United States ex rel. Bilokumsky v. Tod, 1923, 263 U.S. 149, 155, 44 S.Ct. 54, 68 L.Ed. 221, but because of the serious consequences to the deportee, the substantive fairness of the administrative hearings requires close scrutiny. Bridges v. Wixon, 1945, 326 U.S. 135, 153-156, 65 S.Ct. 1443, 89 L.Ed. 2103. Common law rules of evidence are not based in constitutional interdictions[5] and administrative tribunals are not bound by such rules except those perpetuated in governing regulations.[6] However a slavish and formalistic approach to the regulations is not necessary to due process. In habeas corpus proceedings, the court should examine no further than to see that those procedures, designed for and necessary to the intrinsic fairness of the deportation proceedings are scrupulously observed, Bridges case, supra; and, there is substantial reliable and probative evidence to justify the finding that the alien is deportable.[7] We find that the evidence in this case was substan-

"(b) Purpose. The purpose of the investigation shall be to discover whether or not a prima facie case for deportation exists; that is, whether there is credible evidence reasonably establishing (1) that the person investigated is an alien, and (2) that he is subject to deportation.

"(c) Interrogation of aliens under investigation. All statements secured from the alien or any other person during the investigation, which are to be used as evidence, shall be taken down in writing; and the investigating officer shall ask the person interrogated to sign the statement. Whenever such a recorded statement is to be obtained from any person, the investigating officer shall identify himself to such person and the interrogation of that person shall be under oath or affirmation. Whenever a recorded statement is to be obtained from a person under investigation, he shall be warned that any statement made by him may be used as evidence in any subsequent proceeding."

5. Opp Cotton Mills v. Adm'r., 1940, 312 U.S. 126, 155, 61 S.Ct. 524, 85 L.Ed. 624; Willapoint Oysters, Inc. v. Ewing, 9 Cir., 174 F.2d 676.

6. Mahler v. Eby, 1923, 264 U.S. 32, 44 S. Ct. 283, 68 L.Ed. 549; United States ex rel. Vajtauer v. Commissioner, 1927, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560; United States ex rel. Bilokumsky v. Tod, supra; Low Wah Suey v. Backus, 1912, 225 U.S. 460, 32 S.Ct. 734, 56 L.Ed. 1165; Moncado v. Ramsey, 8 Cir., 1948, 167 F.2d 191, 196; United States ex rel. Medeiros v. Watkins, 2 Cir., 1948, 166 F.2d 897, exhaustive collation of authorities at page 899; United States ex rel. Doukas v. Wiley, 7 Cir., 1947, 160 F.2d 92, 94; Nicoli v. Briggs, 10 Cir., 1936, 83 F.2d 375, 377; Kjar v. Doak, 7 Cir., 1932, 61 F.2d 566, 567; Ex parte Shigenari Mayemura, 9 Cir., 1931, 53 F.2d 621, 622; Ghiggeri v. Nagle, 9 Cir., 1927, 19 F.2d 875, 876.

7. United States ex rel. Vajtauer, supra, note 6; United States ex rel. Tisi v. Tod, 1924, 264 U.S. 131, 133–134, 44

tial and reliable, and that it fully sustains the order of deportation.

### Appellant's Return From Mexico as an "Entry"

In order for an alien's return to this country to constitute an "entry" as contemplated by 8 U.S.C.A. § 155(a), supra, his departure must have been voluntary, with knowledge that his destination is foreign.[8] The intention to return to this country, whether after a mere few hours or an extended vacation abroad, is immaterial. If the length of time spent abroad is an element to be considered, it must be made so by Congress, not the courts. Compare Madokoro v. Del Guercio, 9 Cir., 1947, 160 F.2d 164; Cahan v. Carr, 9 Cir., 47 F.2d 604, 605; Lewis v. Frick, 233 U.S. 291, 297, 34 S.Ct. 488, 58 L.Ed. 967. This is not a "sleeping car" case, Di Pasquale v. Karnuth, 2 Cir., 158 F.2d 878, nor does it present a situation similar to that shown in Del Guercio, etc., v. Delgadillo, 9 Cir., 159 F.2d 130, reversed in Delgadillo v. Carmichael 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17. Appellant's visit to Mexico required and was the result of a willful and purposeful intent to depart from the United States. The evidence leaves no doubt that he regarded it as a pleasure trip. To hold that his return into the United States from this trip did not constitute a re-entry would devitalize the law clearly applicable to such an "entry" and leave it utterly meaningless. If this sort of a change in

the law is to be effected, Congress and not the Federal Courts should sanction it.

### The Alien's Prior Crime

Appellant in no way denies the acts of sexual perversion shown by this record and it is not contested that his conduct in New York in 1923 constituted a felony, and involved moral turpitude. Success in evading deserved punishment in no way mitigated that offense.

That the crime was committed in the United States is of no consequence so long as it is "prior to entry." The obvious purpose of section 155, supra, was to rid the United States of undesirable aliens. See United States ex rel. Volpe v. Smith, 1933, 289 U.S. 422, 425, 53 S.Ct. 665, 667, 77 L.Ed. 1298 where it was said: "Aliens who have committed crimes while permitted to remain here may be decidedly more objectionable than persons who have transgressed the laws of another country." [9]

### Admissibility of Prior Statements

The basic questions in this case are whether the admission of appellant's sworn statements violated standards of fundamental fairness necessary to the validity of the hearing or violated the procedural regulations here applicable and necessary to assure such fairness. This Circuit has uniformly held such statements to be admissible.[10]

---

S.Ct. 260, 68 L.Ed. 590; United States ex rel. Bilokumsky v. Tod, 263 U.S. at page 157, 44 S.Ct. page 57, supra; Low Wah Suey v. Backus, 225 U.S. at page 468, 32 S.Ct. at page 735, supra, note 6; Moncado v. Ramsey, 167 F.2d at page 196, supra, note 6; United States ex rel. Medeiros v. Watkins, supra, note 6; U. S. ex rel. Doukas v. Wiley, 160 F.2d at pages 94–95, supra, note 6; Keitaro Karamoto v. Burnett, 9 Cir., 1933, 68 F.2d 278, 279; Kjar v. Doak, 61 F.2d at page 567, supra, note 6; Ex Parte Shigenari Mayemura, supra, note 6; Ghiggeri v. Nagle, 19 F.2d at page 876, supra, note 6; Chan Wong v. Nagle, 9 Cir., 1927, 17 F.2d 987; Wong Back Sue v. Connell, 9 Cir. 1916, 233 F. 659, 663; Jung Sam v. Haff, 9 Cir., 1940, 116 F.2d 384.

**8.** Delgadillo v. Carmichael, 1947, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17; United States ex rel. Claussen v. Day, 1929, 279 U.S. 398, 49 S.Ct. 354, 73 L.Ed. 758; United States ex rel. Stapf v. Corsi, 1932, 287 U.S. 129, 53 S.Ct. 40, 77 L.Ed. 215; Carmichael v. Delaney, 9 Cir., 1948, 170 F.2d 239; Di Pasquale v. Karnuth, 2 Cir., 1947, 158 F.2d 878.

**9.** See also, United States ex rel. Claussen v. Day, supra, note 8; and Lewis v. Frick, 1914, 233 U.S. 291, 34 S.Ct. 488, 58 L.Ed. 967.

**10.** Chan Nom Gee v. United States, 9 Cir., 1932, 57 F.2d 646, 649; Ex Parte Kishimoto, 9 Cir., 1929, 32 F.2d 991, 992; Ghiggeri v. Nagle, 9 Cir., 1927, 19 F.2d

■ We cannot hold that standards of "fundamental fairness" of the deportation proceedings, which are administrative proceedings not bound by strict common law rules of evidence, are violated when common sense dictates that these statements would have been *judicially* admissible and accepted as substantive evidence as "admissions."[11]

■ Appellant denied under oath at the formal deportation hearing on June 12, 1943 before a Presiding Inspector that he had made a sworn statement before an Immigration Inspector (Busselle) in the Los Angeles Jail, and denied that he entered Mexico in 1939. On the latter point he was questioned and made answers as follows:

"Q. Where and when did you last enter the United States? A. In 1910—I came to Los Angeles from New York.

"Q. Were you in Mexico since your entry in 1910 at New York? A. No. I was in San Diego—that's as far as I got.

"Q. The warrant of arrest states you last entered this country at San Ysidro, California, on Thanksgiving Day, in November 1939. Is that correct? A. No, it isn't. I went to San Diego with my lady friend and stayed there for Thanksgiving and came back that night."

The foregoing was a blunt denial of his sworn statement made before Inspector Busselle in Los Angeles Central Jail on March 10, 1943. That statement, in questions and answers, is as follows:

"Q. When and where did you last enter the United States? A. I last entered the United States at San Ysidro, California on Thanksgiving Day, 1939.

"Q. For what purpose did you enter the United States? A. To get back home again.

"Q. At the time of your last entry into the United States were you questioned by a United States Immigration Officer? A. Well, they stopped us on the border and looked in the window of the car and said 'where are you from?' I said 'New York,' and they waived us on."

Confronted with this contradictory testimony which reached to the very heart of the case, the Presiding Inspector ordered the formal deportation hearing continued until he could secure the return of Inspector Busselle who was then on detail in Arizona. Busselle later testified in this hearing concerning the taking of the sworn statement of Schoeps in which the appellant admitted his entry into the United States at San Ysidro in 1939.

875, 876; Chan Wong v. Nagle, 9 Cir., 1927, 17 F.2d 987; see also, Plane v. Carr, 9 Cir., 1927, 19 F.2d 470 and Wong Back Sue v. Connell, supra, note 7. On this point see also, United States ex rel. Bilokumsky v. Tod, and United States ex rel. Vajtauer v. Commissioner, supra, note 6; and Joong Sui Noon v. United States, 8 Cir., 1935, 76 F.2d 249 and authorities cited at p. 250; Moncado v. Ramsey, supra, note 6; United States ex rel. Doukas v. Wiley, supra, note 6.

11. 4 Wigmore on Evidence (3rd Ed.) § 1048 et seq.; Milton v. United States, 71 App. D.C. 394, 110 F.2d 556, 560, "Admissions have probative value not because they have been subjected to cross-examination and therefore satisfy the hearsay rule, but because they are statements by a party opponent, inconsistent with his present position as expressed in his pleadings and testimony. It is not even necessary that such evidence should have

been given in a courtroom or under oath. The fact, that it was so given in the present case, however, does not detract from its admissibility." And see 3 Wigmore, supra, § 1018(b)˙ wherein the author persuasively argues that prior self-contradictory statements of any witness (whether a party or not) should logically be given affirmative testimonial value. Wigmore concedes that the views he expresses in § 1018(b) have not been generally accepted by the courts. But the Supreme Court has declared that the technical rules of evidence applied by the courts are not applicable to administrative proceedings. Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 229–230, 59 S.Ct. 206, 83 L.Ed. 126; and cases there cited; Opp Cotton Mills v. Administrator, 312 U.S. 126, 155, 61 S.Ct. 524, 85 L.Ed. 624, and cases there cited.

■ The prior recorded and sworn statements were clearly against appellant's interest. The modern rule, as we see it, is that a statement (even though unsworn) is admissible as substantive evidence, if the fact asserted in the declaration is so far contrary to the declarant's pecuniary or proprietary interest, or so far subjects him to criminal or civil liability, or renders him an object of hatred, ridicule or social disapproval, that a reasonable man would not have made such a statement unless he believed it to be true. See Citizens' Nat. Bank of Los Angeles v. Santa Rita Hotel Co., 9 Cir., 1927, 22 F.2d 524. The common sense reason underlying the rule is that a statement which asserts "a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus sanctioned, even though oath and cross examination are wanting." 5 Wigmore, supra, § 1457. See Gin Soon Ging v. Carmichael, 9 Cir., 1941, 123 F.2d 72. In this case appellant's statements were under oath and he was present for cross-examination.

## Claim That the Regulations Were Violated

■ Appellant, however, contends that the regulations of the Immigration Service[12] forbid the introduction of these recorded statements. The applicable regulation provides: "A recorded statement made by the alien * * * during an investigation may be received only if the maker of such statement is [1] unavailable or [2] refused to testify at the warrant hearing or [3] gives testimony contradicting the statements made during the investigation." It is clear that appellant did refuse to testify as to a material matter appearing in his sworn statement taken during the investigation and did give testimony contradicting that statement. Hence the necessity of calling Busselle as a witness.

We are of the view that this record fully establishes that all applicable regulations were scrupulously observed. Their validity is not challenged.

■ At the very inception of the formal hearings, appellant testified that he had never been in Mexico, either in 1939 or any other year. This was clearly contrary to his prior recorded sworn statement and thus the recorded statement in toto immediately became admissible, including as it did, the admissions of his crimes recorded therein. The above regulation sensibly makes the "recorded statement" admissible—not merely *that portion* of the recorded statement contradictory of appellant's assertions at the warrant hearing. The reason for this would seem obvious. It is assumed since the alien signed the recorded statement under oath that he spoke the truth and will do the same when later testifying at the hearings. Therefore recorded statements, although probative and credible, will be unnecessary. They will not be the "best" evidence. However, when the alien changes his story, the whole of his testimony at the hearings becomes immediately suspect, and thus the whole of the previously recorded statements is admissible as substantive evidence.

■ The sworn and recorded statements are admissible under yet another exception in the above regulation. When appellant was questioned at the warrant hearing concerning his previously admitted acts of sexual perversion, his counsel immediately and repeatedly claimed for him a "privilege against self-crimination," respecting *these matters,* using such language as: "On advice of counsel, he will refuse to answer," and, "I instruct you not to answer the question."

The record reveals that he followed the advice of his counsel; he remained silent and did not answer any of the questions propounded to him concerning these alleged sex offenses. The record indicates that he did not assert any personal claim of privilege in connection therewith. His silence or refusal to answer on these matters appears to have been due solely to the advice of counsel. The record is also clear that he did not attempt in any way to repudiate his prior written and

12. 8 C.F.R. § 150.6(i): Use of Statements or admissions made during Investigation.

voluntarily sworn confession that he had committed these offenses.

As to the claim of privilege against self-incrimination being personal to him, see Ziegler v. United States, 9 Cir., 174 F.2d 439, 447 and cases cited in notes 26 and 27. For further comments on the personal nature of claim of privilege asserted by a witness, consult Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; United States ex rel. Vajtauer v. Commissioner, 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560; United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210, 82 L.Ed. 1376; United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542, 152 A.L.R. 1202.

We think that this situation is clearly an instance of a refusal to testify under the second alternative of the above noted regulation relating to the use of statements or admissions made during Investigation. These matters are also discussed at a later point in this opinion.

One further matter suggested on appeal should be noted at this point. Appellant's answers to the first investigatory interrogation were, at the time, reduced to longhand by the investigator. It was in these answers that appellant made the admissions concerning his acts of perversion and his trip to Mexico in 1939. On cross examination of this investigator, at the warrant hearing, appellant's counsel asked that these longhand notes be admitted. Appellant cannot now object that this evidence was received.

We hold that the recorded statements, which were made freely and voluntarily under oath and with appellant's full knowledge that the Government was free to use them against him in any subsequent proceeding, were validly admitted. We further hold that there is substantial probative evidence in the record to fully support the deportation order. As stated in Quon Quon Poy v. Johnson, 1927, 273 U.S. 352, at page 357, 47 S.Ct. 346, at page 348, 71 L.Ed. 680, "We see no reason to doubt that evidence properly taken before an inspector * * *—which has substantially the same effect as a deposition taken in an ordinary case—may be introduced before the Board and considered." This statement is given added emphasis in this case by the fact that appellant made no effort to repudiate his previous sworn statements except in the manner we have noted.

Admission of the Physician's Report

The foregoing comments on the admissibility of the sworn written statements bear directly on the issue presented by the admission of the routine report of Dr. DeRiver the Los Angeles Prison Psychiatrist. Appellant contends that the admission of this physician's report was prejudicial error. We cannot agree with this contention.

The warrant of deportation in this case was not rested upon proof of the 1943 Los Angeles sex offense against a three year old girl. The final determination, and the one which is decisive of appellant's rights, is recited in the warrant of deportation. The essential and controlling part reads as follows: "Whereas, after due hearing before an authorized immigrant inspector, and upon the basis thereof, an order has been duly made that the alien Jacob Schoeps or Jack Schoeps who entered the United States at San Ysidro, Calif., on Thanksgiving Day of 1939, is subject to deportation under the following provisions of the laws of the United States to wit: The Act of Feb. 5, 1917, in that he *admits* having committed a felony or other crime or misdemeanor involving moral turpitude *prior to entry* into the United States, to wit: He being over the age of 18 years, indulged in indecent and immoral practices with the sexual parts or organs of a child under the age of 10 years." (Emphasis supplied.)

From the foregoing warrant of deportation it clearly appears that the sole and only basis for appellant's deportation is his *admission* of the commission of a felony (in New York) involving moral turpitude (at a time) *prior to entry* into the United States. This "entry" was, of course, the "entry" in 1939.

400

In the vital and end result we have noted, the effect of the DeRiver report is demonstrated to be harmless. We, therefore, need not decide whether the report should have been excluded as "hearsay." However, we note that Dr. DeRiver testified at the hearing and was cross-examined by appellant's counsel. Further, his report was properly qualified by him as being an official routine report made in the performance of required official duties.

Congress has apparently not seen fit to legislate on the question of the so-called "physician-patient privilege" and for the reasons above stated we do not follow the suggestion that it is here applicable since we do not believe that it bears on the question of fairness of the administrative hearing given appellant[13] or the ultimate and controlling reason for his deportation.

It is our view and we hold that admission of the records above referred to did not deprive this administrative hearing of "fundamental fairness."

### Self-Incrimination Privilege

■■■■ Appellant strongly contends that an alien may invoke the privilege against self-incrimination in deportation proceedings. In a proper case, we assume the privilege would be applicable. United States ex rel. Vajtauer v. Commissioner, supra. However, for the rule of privilege relied upon to be applicable under the facts in the case at bar, the privilege of refusing to answer would have to rest upon a showing that an answer would involve the claimant in tangible danger of conviction of a Federal offense. United States v. Murdock, 1931, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210, 82 A.L.R. 1376.[14] None of

appellant's acts of sexual perversion involved, nor is it claimed that they involved, a violation of any Federal statute. Under the circumstances of this case the claim of privilege here asserted lacks merit.

■■■■ Furthermore, the "privilege" against incriminating himself (as to the New York offense against a seven year old girl, long since outlawed, and also as to the 1943 Los Angeles offense) was clearly waived when appellant made the claimed incriminatory statements to the investigating inspector voluntarily and under oath after he was carefully advised by the inspector that they might be used in subsequent deportation or criminal proceedings against him. [15]

■■■■ After a hearing on the petition for the writ of habeas corpus, the lower court made and entered Findings of Fact and Conclusions of Law and it is sufficient to say that they proclaim the fairness and regularity of the deportation proceedings and provide full support for the order deporting Schoeps to Germany. The decision of the court rests upon a record replete with sustaining evidence of a substantial, convincing, and compelling character, and the order discharging the writ of habeas corpus is affirmed.

JAMES ALGER FEE, District Judge (concurring).

This is a difficult choice. But there are certain definite lines of force. We should not allow a moral reaction to prevent us from protecting all basic rights of petitioner, even in this civil case. On the other hand, we should not permit the enormity of the actual penalty—exile—to sway us in carrying out a plain mandate of the stat-

13. 8 Wigmore on Evidence, supra, § 2380 et seq.

14. On the scope of the privilege see United States v. Sullivan, 1927, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, 51 A.L.R. 1020; Arndstein v. McCarthy, 1920, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138; Mason v. United States, 1917, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198; Counselman v. Hitchcock, 1892, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, and the opinion in Ex Parte Irvine, C.C., 74 F. 954 by Dis-

trict Judge Taft, later Chief Justice of the United States. 8 Wigmore on Evidence, § 2261 et seq., supra. (See also note 2 and references in the body of this opinion to the personal nature of the claim of privilege asserted by a witness.)

15. See Ziegler v. United States, 9 Cir., 1949, 174 F.2d 439, 446–447 and authorities cited; United States v. Sorrentino, 3-Cir., 175 F.2d 721; 8 Wigmore, supra, §§ 2275–2278 and the many collated cases therein.

ute. As to the first, Judge Bone's clear and well documented opinion shows that the administrative officers lived up to the letter of the statutes and regulations, although clumsily enough—as is often the case. Under more popular statutes, there would be no question about reaching some distance to support them[1] Every right of petitioner was protected in the face of manifest perjury on his part and in the face of his contemptuous refusal to answer questions when a nonexistent privilege against self crimination was claimed by counsel, not by him.[2] This criminal should not be pardoned because the record shows he is a Hebrew and the deportation is to Germany. There is no doubt as to the fact that petitioner committed and admitted the commission of two crimes, each involving moral turpitude. There is no doubt that petitioner did enter the United States after the commission of one of the offenses. The statute in language and intent then covered the exact situation. The findings of fact and the conclusions of the District Judge are binding upon us under these circumstances. This answers the two considerations posed above.

But other beacons attract our attention. In our opinion, the Act makes a foolish and untenable distinction between those aliens who have committed crimes and have thereafter made technical re-entry into the country and those aliens who have simply committed crimes of enormity, not political offenses in this country. If it had provided for deportation of the latter, the country would have been spared becoming in many instances a "cesspool of offscourings" instead of a "melting-pot," as Zangwill movingly and truly portrayed it. But this is beyond the power of the judiciary by interstitial penetration or forthright amendation.

Notwithstanding the highly fortuitous incidence of such a re-entry, the Supreme Court of the United States, in United States, ex rel. Volpe v. Smith, 289 U.S. 422,[3] held this type laid the basis for deportation. A fertile mind might suggest distinctions, but we will not chop logic. No obvious answer occurs to the query of how a man can make a re-entry as an alien from a foreign country, on which he has casually set foot, into a country in which he has already been permanently domiciled for more than twenty years.

Since we believe, as a policy, this alien and all others who have committed such crimes should be deported whether they have re-entered or not, we are content to rest concurrence on the authority of the highest court.

The District Court should be affirmed and the writ should be dismissed.

1. National Mutual Insurance Co. v. Tidewater Transfer Co., Inc., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. —. Porter v. Warner Holding Co., 328 U.S. 395, 66 S. Ct. 1086, 90 L.Ed. 1332.

2. Boyle v. Wiseman, 10 Exch. 647; U. S.

v. Johnson, D. C., 76 F.Supp. 538, 540, affirmed 3 Cir., 165 F.2d 42, 50.

3. Neither Delgadillo v. Carmichael, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17, nor Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103, have anything to do with the instant case.