MATTER OF C— C— Y—

In DEPORTATION Proceedings

A-10436785

*Decided by Board February 28, 1961*

Fair hearing—Deportation proceedings—Defects in original hearing cured by valid reopened hearing—Privilege against self-incrimination waived by voluntary pre-hearing statement—Validity of warrant of arrest unaffected by withdrawal of deportation order and reopening of proceedings.

(1) Defects in original deportation hearing in 1954 which may have arisen from failure to inform respondent of right to counsel and to provide an interpreter were cured when the proceedings were reopened in 1959 and the respondent was accorded a further hearing satisfying the requirements of due process.

(2) Respondent is not entitled to invoke the privilege against self-incrimination in respect to pre-hearing statement which was voluntarily given to Service investigating officer; such statement was admissible in evidence at the deportation hearing, although the special inquiry officer excluded it from the record.

(3) The warrant of arrest which initiated the deportation action in 1954 remained effective as authority for respondent's detention, despite withdrawal in 1959 of the original order of deportation and subsequent reopening of the proceedings. *See* 309 F.2d 857 (1962).

CHARGE:

Warrant: Act of 1952—Section 241(a)(11) [8 U.S.C. 1251(a)(11)]—Convicted of law relating to illicit traffic in narcotic drugs: Title 26, U.S.C., sections 2553 and 2557 (unlawful sale of heroin); and Title 21, U.S.C., section 174 (unlawful concealment of heroin).

BEFORE THE BOARD

DISCUSSION: In our decision of June 14, 1960, in this matter, we briefly stated the facts relating to respondent's appeal and the basic contentions of counsel. We ordered the record reopened for the admission of certain evidence. The reopened hearing was held and the special inquiry officer, on the basis of the entire record, adopted the decision and order of the special inquiry officer dated December 7, 1959. Respondent again appeals to the Board.

Respondent is married, male, widowed, a Chinese alien, 73 years of age, who originally entered the United States on September 8,

225

1906, as a merchant's son. He has resided in the United States continuously since that entry, with two trips to China. Respondent's immigration and entry documents, protested as inadmissible by counsel, establish that he last entered the United States at San Francisco, California, on July 28, 1926. The special inquiry officer found respondent deportable on the charge stated in the warrant of arrest and ordered his deportation to China.

The hearing under the warrant charge began on September 15, 1954, at the United States Penitentiary, McNeil Island, Washington, after which the special inquiry officer ordered respondent's deportation. Respondent was not represented by counsel and filed no appeal from the special inquiry officer's order. Therefore, the record was not transcribed. Shortly before his scheduled release from that institution, counsel appeared and asked to see a record of respondent's hearing. The record was transcribed on August 19, 1959, after which the examining officer recommended that the hearing be reopened because of errors in procedure. The examining officer's motion of August 20, 1959, stated that the record of the first hearing did not indicate that at the time of hearing the respondent was informed of his right to counsel, nor was he asked any questions with regard to his ability to understand the English language. On the same day, August 20, 1959, the special inquiry officer, stating that the procedural defects reached the question of essential fairness, granted the motion for reopening.

Counsel appeals on the ground that the motion of the examining officer and the order of the special inquiry officer granting the reopening do not comply with the requirements of Title 8, Code of Federal Regulations, section 11 (now section 103.5).[1] The objection is not well taken for two reasons. *First*, counsel has repeatedly requested a "fair hearing" and "due process," which the order to reopen was designed to guarantee. Respondent had no cause to oppose the reopening which was designed to benefit him. He suffered no damage from the fact that the motion and order were served on the same date. Counsel was granted several delays and postponements thereafter. *Second*, if counsel had desired to oppose the reopening, he had an opportunity to do so when the hearing was reconvened at Seattle, Washington, on September 1, 1959. He did not oppose the reopening and, in fact, stated, "As I understand it, the warrant of arrest which was served on the respondent was served prior to the time that orders to show cause were used, and for that reason we would like at this time to consent on behalf of the respondent to proceed under the current regulations." Counsel's only request at that time was that the reopened hearing be not con-

---

[1] 8 CFR 103.5 provides: The party opposing the motion shall have 10 days from the date of service thereof within which he may submit a brief.

fined to what happened at the first (1954) hearing, and to this request the special inquiry officer assented. Counsel again consented to continue with the hearing when he stated that he waived any further explanation through the interpreter of respondent's rights, inasmuch as they had advised him of rights. Counsel further waived the reading and explaining to respondent of the warrant of arrest, in that it also had been explained to him through the interpreter. Not having objected to the reopening on September 1, 1959, as a "party opposing the motion" and having consented to proceeding with the hearings, counsel cannot now raise the issue on appeal.

Counsel appeals on the ground that the hearing of September 16, 1954, and all proceedings thereunder are invalid. Counsel points again to the fact that the Immigration Service did not provide an interpreter at the first hearing (1954), and that the record does not show the special inquiry officer advised appellant of his right to counsel. The warrant of arrest states, "The alien was then informed as to cause of arrest, the conditions of release, *advised as to right of counsel* and furnished with a copy of this warrant" (emphasis supplied), and it is signed by the investigator who served the warrant on respondent on August 18, 1954. However, the hearing was reopened twice, once by the Service and once by us, and the evidence taken in the first hearing was ignored by the special inquiry officer and all documentary evidence introduced there has been reintroduced, over objections of counsel.

Counsel appeals on the ground that the warrant of arrest was not served upon the warden of the penitentiary. The warrant of arrest shows service upon respondent and the record will not necessarily indicate service upon the warden. Service upon the warden is for the convenience of the Immigration Service, to alert the warden to the interest of the Immigration Service in the case, and to assure that the prisoner will be turned over to the Service upon release from the institution. Respondent is not "incompetent" to understand the nature of the proceedings against him in the sense that mentally deficient or insane persons are considered to be incompetent and in need of protection. The warrant shows service upon respondent, and respondent's rights were protected, at least from September 1, 1959, through the present time.

Counsel appeals on the ground that respondent was illegally detained throughout the hearings of September 1, and September 16, 1959, under 8 CFR 242.3(b).[2] Counsel states that there was no valid order of deportation outstanding at the time of appellant's release from the United States Penitentiary, for "the existing order

---

[2] 8 CFR 242.3(b) provides: An alien confined in an institution or hospital shall not be accepted into physical custody by the Service until an order of deportation has been made and the Service is ready to deport the alien.

had been vacated by the order of August 19, 1959, reopening the hearing." The validity of the detention stems from the warrant of arrest, as we point out below.

Counsel appeals on the ground that the alien was illegally detained, in that the warrant of arrest had terminated insofar as the Service was concerned by the issuance of the order of deportation of September 16, 1954, and that the Service could not restore validity to the warrant simply by withdrawing the order of deportation and ordering proceedings reopened. Counsel overlooks the fact that the United States District Court for the Western District of Washington, Northern Division, *on counsel's appeal* stated, "As to the illegality of detention, it is my opinion that under the provisions of section 242(a) of the Immigration and Nationality Act of 1952, the warrant of arrest remains effective as authority for petitioner's detention even though the original order of deportation has been set aside and proceedings reopened" (*United States ex rel. Chung Young Chew v. Boyd, District Director, Immigration and Naturalization Service*, unreported, Civ. No. 4912 (N.D. Wash., September 28, 1959)). A copy of this decision is in the record. Therefore, the detention was lawful, found the court, even though there was "an abuse of discretion by the Attorney General in refusing to admit petitioner to reasonable bail pending the completion of deportation proceedings." There has been no move at any time precipitately to deport respondent. All procedures since the reopening on August 20, 1959, have been in his behalf and to assure him a fair hearing. 8 CFR 242.2(b) authorizes the District Director to detain an alien or to continue his custody.

Counsel appeals on the ground that there is an "insufficiency of evidence to support the findings of fact." He has protested admission in evidence of the records of the Immigration and Naturalization Service, the records of the Federal Penitentiary at McNeil Island, and exhibit 2, copy of the judgment, sentence and record of respondent's conviction (*United States v. Chung Young Chew*, Civ. No. 34041 (N.D. Calif., May 20, 1954)). This exhibit was made part of the record in the original hearing on September 15, 1954. We believed that this necessary and pertinent document, by oversight, had not finally been made a part of the record at the time of the reopened hearing in September 1959. This record was identified by Mrs. C—C—, the Camp Records Control Clerk, Federal Prison Camp, McNeil Island, who was the proper custodian of respondent's records. However, the record of hearing shows that exhibit 2 was handed to counsel at his request for his examination, and the special inquiry officer did not thereafter return to the matter of putting exhibit 2 in the record. It was made a part of the record on July 26, 1960.

Counsel appeals on the ground that exhibit 2 and other exhibits offered herein, do not comply with Rule 44 of the Federal Rules of Civil Procedure.[3] The Service stands upon the ground that an administrative hearing is not bound by the strict rules of evidence and is not unfair merely because such rules and procedures are not followed. We prefer, however, to point out that exhibit 2 is properly in evidence and complies with the requirements of a properly authenticated copy. *First*, the certificate is adequate under Rule 44. *Second*, Rule 44 is not the exclusive method of proving documents. *United States* v. *Aluminum Company of America* (D.C., N.Y., 1939), 1 F.R.D. 71, wherein the court stated that Rule 44 does not interfere with any other accepted methods for admitting in evidence a document when it is certified by a designated official. The court said, "I take it further that the purpose of the rule was to reduce delay and to reduce expense in obtaining from Government departments documents intended to be offered in evidence." Rule 44 merely adds another method for authenticating departmental documents. See also *Banco de España* v. *Federal Reserve Bank of New York*, 114 F.2d 438 (C.C.A. 2, 1940), and Notes of Advisory Committee on Rules, 28 U.S.C.A. Rule 44.

*Third*, exhibit 2, the court record, is adequate also under 28 U.S.C. 1733.[4] There is a seal on this copy, faint to be sure, but readable, stating "Seal . . . United States District Court, Northern District of California," the same as the seal on Government exhibit 13, whereon the seal is legible and clear. It is our opinion that the

[3] Rule 44, Federal Rules of Civil Procedure, provides:

a. Authentication of Copy. An official record or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody. If the office in which the record is kept is within the United States or within a territory or insular possession subject to the dominion of the United States, the certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office. If the office in which the record is kept is in a foreign state or country, the certificate may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent or by any officer in the foreign service of the United States stationed in the foreign state or country in which the record is kept, and authenticated by the seal of his office.

[4] 28 U.S.C. 1733 provides: (a) Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept. (b) Properly authenticated copies or transcripts of any books, records, papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof.

words, "A true copy, certified this 28th day of May, 1954 (signed) C. W. Calbreath, clerk, by *Marguerite Ellis*, Deputy Clerk," with the seal of the court, are sufficient guarantee of the authenticity of the copy.

Exhibit 2 discloses that respondent appeared with counsel on May 20, 1954, in the United States District Court for the Northern District of California and was convicted on a plea of guilty of violation of the Harrison Narcotic Act, 26 U.S.C. 2553 and 2557, in that, count one, he did unlawfully sell, dispense and distribute, not in or from the original stamped package, a certain quantity of a narcotic drug, to wit, approximately one pound of heroin; and count two, violation of Jones-Miller Act, 21 U.S.C. 174, concealment of heroin, which "had been imported into the United States . . . contrary to law, as said defendant . . . knew." Respondent was sentenced on these two counts to a total of eight years' imprisonment and a total fine of three thousand dollars. Five additional counts as to defendant were ordered dismissed. Exhibit 2 discloses further that the court stated at time of sentencing that it would not recommend against deportation of respondent.[5]

Counsel appeals on the ground that the Immigration Service failed to produce any witness to identify respondent as the same person as the defendant in the San Francisco narcotic case, declaring the evidence is inadequate to establish that respondent is, in fact, C—Y—C—, the person named in the judgment, sentence and commitment. Counsel cites cases holding that identity of names alone is not sufficient proof of identity to warrant a trial court in submitting to a jury the question whether the person before the court is the same as the defendant in other proceedings. The Service did not rely on the often-used rule that identity of names raises a rebuttable presumption or inference of identity of persons. On the contrary, the record contains ample proof of respondent's identity in the form of records and the testimony of witnesses. Exhibit 10 consists of respondent's 1926 visa and other entry documents issued at Hong Kong by Department of State officials. Exhibit 11 is respondent's application for preinvestigation prior to departure from the United States, issued by Immigration officials in San Francisco in 1922. Each carries an identifying photograph of re-

[5] Immigration and Nationality Act, section 241(b), 8 U.S.C. 1251(b), provides: The provisions of subsection (a)(4) respecting the deportation of an alien convicted of a crime or crimes shall not apply * * * (2) If the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter. * * *

spondent. Counsel complains that these are not documents shown to be properly in the custody of the Immigration and Naturalization Service since they are records of the Departments of State and Labor. In 1922 the Immigration Service was, of course, part of the Department of Labor. Counsel declares that exhibits 10 and 11 are "not admissible as certified copies of Government records under 28 U.S.C. 1733." They are not *certified copies*, because they are *originals* of respondent's departure and reentry documents and clearly admissible under 28 U.S.C. 1733(a). They are signed by the proper officials and carry the seals of those Departments.

Exhibit 13 is a photostatic copy of a Declaration of Intention to become a citizen. The name C. W. Calbreath, Clerk of the United States District Court at San Francisco, California, is stamped thereon and it bears the imprinted seal of that court, and an attached certification: "I, C. W. Calbreath, Clerk of the United States District Court for the Northern District of California, do hereby certify that the annexed and foregoing is a true and full copy of the original Declaration of Intention filed November 1st, 1945, by C—Y—C— * * * No. 121204." This exhibit is admissible under 28 U.S.C. 1733, and under the regulations. *Harrison* v. *Metropolitan Life Insurance Co.*, 168 Pa. Super. 474, 79 A.2d 115 (1951), held that photostatic copies of original records of Immigration and Naturalization Service of the Department of Justice in naturalization proceedings, properly authenticated under the seal of the Department, were admissible to establish the date of birth of a person naturalized.

Exhibit No. 14 was the record of respondent's signed, sworn preliminary statement of May 13, 1954. The special inquiry officer sustained counsel's objection to exhibit 14 and excluded it from consideration. Respondent signed both his English and Chinese names to exhibit 14 and testified through an official interpreter. He stated his name, with aliases, place of birth, Chinese citizenship, and the fact that he had pleaded guilty to two counts under the Harrison Narcotic Act and was to be sentenced May 20, 1954. This preliminary statement carries, as usual, the warning that any statements he makes must be voluntary and may be used by the Government as evidence in any deportation or criminal proceedings, and he was asked, "Are you willing to make such a statement clearly and voluntarily under oath?" The preliminary statement shows that he answered "yes." The present regulations provide that the preliminary statement is admissible in evidence,[6] and many judicial

[6] 8 CFR 242.14 *Evidence*— * * * (c) *Use of prior statements.* The special inquiry officer may receive in evidence any oral or written statement which is material and relevant to any issue in the case previously made by the respondent or any other person during any investigation, examination, hearing, or trial.

231

and administrative decisions have held such statements to be admissible. *Schoeps* v. *Carmichael*, 177 F.2d 391 (C.C.A. 9, 1949); *Reynolds* v. *United States ex rel. Koleff*, 70 F.2d 39 (C.A. 7, 1934); *United States ex rel. Bilokumsky* v. *Tod*, 263 U.S. 149 (1923); *Ungar* v. *Seaman*, 4 F.2d 80 (C.C.A. 8, 1924); *United States ex rel. Catalano* v. *Shaughnessy*, 197 F.2d 65 (C.A. 2, 1952). When the special inquiry officer propounded to respondent these same questions at the 1959 hearings, counsel objected to each in turn, on the ground that it was violative of respondent's Constitutional privileges. *Schoeps, supra*, declared that the privilege against incriminating himself was waived by the statement an alien had voluntarily made to an investigating inspector after having been adequately warned. See also *Matter of F—*, 4—475 (1951), footnotes 1 and 2; *Matter of P—*, 5—306 (1953), citing cases, wherein we stated that when a witness has once given testimony voluntarily it may afterward be used against him in the same deportation proceedings, and he may not claim the privilege of self-incrimination as to such testimony. Exhibit 14 is clearly admissible under these decisions and under the usual immigration practice and the regulations, but its exclusion from the record by the special inquiry officer did respondent no harm.

Respondent has offered no evidence to contradict the Government's showing by reasonable, substantial and probative evidence that respondent is the person he is alleged to be. On the other hand, the Service offered three witnesses who identified respondent as the person known as C—Y—C— at McNeil Island Penitentiary and who identified the prison record relating to him. R—L—J—, Detention Officer, Immigration and Naturalization Service, Seattle, testified that it is among his duties to pick up prisoners at the United States Penitentiary at McNeil Island, Washington, to escort them to the Detention Facilities at Seattle, Washington; that on August 31, 1959, he picked up a person named C—Y—C— (or C—C—Y—); that the respondent, sitting across the table from the witness, was that person; that he also picked up documents and papers given him by the prison in connection with the transfer of respondent from their custody to the custody of the Service. Among the papers identified by Mr. J— is exhibit 3, Certificate of Conditional Release, and exhibit 4, a copy of certain provisions of the Narcotic Control Act of 1956, dated August 31, 1959, signed by the Supervisor, Classification and Parole, and signed by C—Y—C—. Exhibit 5 is a certificate entitling prisoner to gratuity, signed by Mrs. C—, Camp Records Control Clerk, who also testified that she had a recollection of C—C—Y—, and identified him as the respondent present at the hearing. Exhibit 3 is signed by one C—K—McD—, Parole Executive, and also by the Superintendent of the Peniten-

tiary. These routine prison documents were accepted in evidence by the special inquiry officer over counsel's objections for the purpose of establishing identity. We think they are records kept in the regular order of business and admissible as such under 28 U.S.C. 1732 and 1733.

P—J—J—, Jr., United States Parole Officer, United States Penitentiary, McNeil Island, Washington, stated that he knew respondent very well, had known him through the years he was in the institution, and had talked with him on many occasions. Mr. J— also testified to respondent's limited knowledge of English, but stated that he had never used an interpreter to communicate with respondent.

Counsel offered E—L—B—, construction lead foreman at the McNeil Camp, as a witness, and Mr. B— identified respondent as the person he had known in the McNeil Island Prison Camp since January 1959 (approximately eight months). He also testified to respondent's limited knowledge of English.

It is the opinion of the Board that the testimony of the above-described witnesses, in addition to the admissible documents and exhibits, is competent and adequate to connect respondent with the person who was convicted on May 20, 1954, upon his plea of guilty of violations of the Harrison Narcotic Act in the United States District Court for the Southern District of California and who served a term in the McNeil Island Penitentiary on that judgment, conviction and sentence.

Counsel attempts to draw an analogy between this case and the evidence which was ruled insufficient in *Bridges* v. *Wixon*, 326 U.S. 135 (1945). The evidence there concerned was an unsigned, unsworn statement which the Supreme Court ruled was insufficient to form the basis for the decree of deportability. That statement bears no relation to the exhibits in the instant matter which we have described above in detail. This argument need not be dignified by further discussion.

At the reopened hearing on September 1, 1959, respondent had two attorneys and one interpreter. At the reopened hearing on July 26, 1960, he had two attorneys and two interpreters. On both occasions he refused to testify, even to state his name. Counsel have stated on numerous occasions at the hearings and in their briefs their reasons for advising respondent to stand mute. Even in criminal proceedings there should be some rational connection between pleading the 5th Amendment and the actual facts of the case. Without going into the merits of counsel's grounds for so advising respondent, it is clear that there could be no possible reason for another reopening of this record. The respondent is entitled only to "procedural due process." That is, he must be given notice of

the hearing and opportunity to show that he does not come within the classification of aliens whose deportation Congress has directed. The respondent did not take advantage of the hearings, legally constituted and conducted, which were offered and that is not the fault of the Immigration and Naturalization Service. *United States ex rel. Harisiades* v. *Shaughnessy*, 187 F.2d 137, 141 (C.A.2, 1951), and cases cited, footnote 12; aff'd 324 U.S. 580 (1952), reh. den. 343 U.S. 936 (1952).

This record establishes by competent, adequate and probative evidence: (1) that respondent is an alien; (2) that he was convicted of a narcotic violation; (3) that he has had due process and fair hearing; (4) that his deportability is established by the conviction record and other documents; and (5) that respondent is ineligible for any form of discretionary relief. The appeal will be dismissed.

ORDER: It is ordered that the order of deportation be and hereby is affirmed.

*It is further ordered* that the appeal be and is hereby dismissed.

234