## MATTER OF PANG*

### In Deportation Proceedings

### A-15169631

### Decided by Board June 9, 1965

(1) Authority exists under sections 235, 287(a) and 287(b), Immigration and Nationality Act, for a Service officer to interrogate or take evidence from an alien as to his right to remain in the United States, and respondent's pre-hearing sworn statement made voluntarily and without request for representation by counsel before an investigator of the Service is admissible in evidence in deportation proceedings (8 CFR 242.14(c)); is not in violation of due process or fair hearing; and is not bound by judicial rules of evidence concerning authentication in criminal proceedings since a deportation proceeding is civil in nature rather than criminal and is not within *Escobedo* v. *Illinois*, 378 U.S. 478 (1964), and *Massiah* v. *United States*, 377 U.S. 201 (1964).**

(2) An alien who refuses to testify at his deportation hearing must nevertheless show his right to stay in the United States or he must depart.**

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered after having been refused permission to land as a crewman.

The special inquiry officer found that respondent is 34 years old, married, male, alien, a native and citizen of China, who last arrived in the United States at New York on September 4, 1962. The special inquiry officer found further that he is a crewman who was refused permission to go ashore but that he did go ashore, and has remained in the United States since that date. The special inquiry officer found respondent deportable on the charge set forth above and ordered him deported to the Republic of China on Formosa.

Respondent requests termination of these proceedings on the ground that the above-found facts are not established by the record.

*NOTE: See also, *Matter of Pang*, Int. Dec. No. 1552, of which the alien in this case is also the subject.

**Reaffirmed, 368 F.2d 637 (C.A. 3, 1966).

Respondent declined, through counsel, to request voluntary departure from the United States, and he made no application for temporary withholding of deportation under section 243(h) of the Immigration and Nationality Act. He appeals from the special inquiry officer's finding that he is deportable. The appeal will be dismissed.

The following facts are admitted: On November 4, 1964, two investigators for the Immigration and Naturalization Service stopped at a restaurant in Allentown, Pennsylvania, on a routine check. They went directly to the kitchen, identified themselves as investigators for the Immigration and Naturalization Service, talked to Mr. Low, one of the cooks, and then to respondent. The record contains an affidavit dated November 6, 1964, executed at Philadelphia, Pennsylvania, referred to hereinafter as Exhibit 2. Exhibit 2 was written by Harold Stokes, one of the investigators, from information taken through an interpreter for the Immigration and Naturalization Service, Mr. Marvin Kan.

Respondent alleges with regard to Exhibit 2 that it was improperly admitted into evidence: (1) in violation of the respondent's constitutional rights under the Fifth Amendment, (2) in violation of the rules of evidence concerning authentication and that a proper foundation was not laid, (3) in violation of the Supreme Court decisions guaranteeing the right to an attorney at the time an investigation for deportation is initiated. Respondent further alleges that the Immigration and Naturalization Service did not sustain its burden of proof in the deportation hearing.

Exhibit 2, Affidavit, is written on Form I-215A which has at the top a printed acknowledgment by the affiant stating, "I, ————, acknowledge that the above-named officer has identified himself to me as an officer of the United States Immigration and Naturalization Service authorized by law to administer oaths and take testimony in connection with the enforcement of the Immigration and Naturalization laws of the United States. I am willing to make a sworn statement before him. I understand that any statement which I make must be freely and voluntarily given and that it may be used by the Government as evidence in any proceedings against me or any other person. Being duly sworn, I make the following statement freely and voluntarily:". In this affidavit respondent stated that he was born in China on October 2, 1930, that he is a Chinese citizen, that neither of his parents was ever a United States citizen or resident in this country. He stated that he arrived in the United States at New York September 4, 1962, and was refused permission to go ashore by the immigration officers, but that he went ashore with his "boss, the bosun" between 6 p.m. and 8 p.m. He further stated gen-

erally his movements from town to town since his entry, gave his Social Security number, and stated that he had come to the United States only once before—as a member of the SS "Hindustan" in 1961 or 1962 at which time he was refused shore leave at Norfolk, Virginia. The affidavit is signed "Ah Chiu Pang" both on pages 1 and 2. A certification by Mr. Kan, the interpreter, on page 2 declares (in part), "I read the foregoing to Ah Chiu Pang and that he stated that _____ understood _____ were true and correct".

Respondent's hearing was called for March 2, 1965, at Philadelphia, Pennsylvania. He requested a continuance to get a lawyer. He was informed that the order to show cause had instructed him to appear with a lawyer if he wished to be represented. He was nevertheless, given until March 12, 1965, to secure counsel. At the hearing on March 12, and on March 19, 1965, respondent stated his name and where he resides, and he declined to answer all other questions on the ground that he was invoking the Fifth Amendment.

Mr. Harold Stokes, the investigator for the Immigration and Naturalization Service, testified that Allentown, Pennsylvania, is part of his District, and that he works out of the Philadelphia District office. He testified that he and another investigator were making a routine search in Allentown, because there had recently been a number of desertions from Chinese vessels in that district. Mr. Stokes identified respondent as the person, Ah Chiu Pang, whom he found at Allentown working in the kitchen of the Rubes' Restaurant. First the investigators showed him their credentials and identified themselves as immigration officers. Respondent was asked for his passport or any other form of identification. He admitted that he had no papers, and that he was prepared to go with them. Mr. Stokes testified that respondent said in English, "I do not have any papers". Otherwise, the conversation between the investigators and respondent was through Mr. Low, a Chinese cook in the restaurant kitchen who acted as interpreter. They next saw him in the Philadelphia office, perhaps two days later, at which time a statement was taken from respondent. This statement was written in Mr. Stokes' handwriting and taken through Mr. Kan, a regular Immigration and Naturalization Service interpreter. Mr. Stokes testified that he placed respondent under oath, and respondent signed the affidavit. Mr. Stokes also testified that the respondent was told that the affidavit was a voluntary statement, that it could be used in any proceeding against him, and that he did not ask to be represented by counsel.

Counsel contends that Exhibit 2 is not properly identified or related to respondent, in that Mr. Kan, the interpreter, testified that he

did not specifically remember respondent, and could not identify respondent as the person who signed the statement; he could only testify as to the invariable procedure followed in all cases. Mr. Kan testified that he had worked as a part-time interpreter for the Immigration and Naturalization Service for approximately two and a half years, and is called to act as interpreter an average of "a couple times a month". He testified that he does not remember names, that he did not remember respondent by name, but that respondent spoke to him when he entered the hearing, saying, "We meet again", and this recalled him to Mr. Kan. He testified that the initials "A. C. P." on page 1 were placed there by respondent in the interpreter's presence. Mr. Kan testifies that the procedure is always the same, that he reads back the questions or statement to the alien, and then signs his own name, and the one who is questioned is also asked to sign his name. He testified that he always reads the entire affidavit including the printing and the handwriting, that the one being questioned is always advised that he may refuse to answer, and that any testimony he gives may be used against him. Counsel objects that Exhibit 2 and the signature thereon were not adequately identified by Mr. Kan. We believe that the interpreter's testimony was clear and positive that prior to the signing the interpreter read the statement back to respondent, and that respondent signed his name to the affidavit.

The special inquiry officer cited Title 8, Code of Federal Regulations, section 242.14(c), providing that a special inquiry officer may receive in evidence any oral or written statement previously made by the respondent or any other person during an investigation which is material and relevant to any issue in the case. The Service Representative in oral argument referred to section 235 and section 287(a) of the Immigration and Nationality Act providing that any officer or employee of the Immigration Service authorized by regulation prescribed by the Attorney General, shall have power without warrant to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States. We also commend for respondent's consideration section 287(b) regarding the authority of an officer or employee of the Service to take and administer oaths and take and consider evidence concerning the privilege of any person to reside in the United States.

Counsel stands upon the contention that the Government bears the burden of proof in deportation proceedings. Section 291 of the Immigration and Nationality Act (8 U.S.C. 1361), however, provides: In any deportation proceeding under chapter 5 against any person, the burden of proof shall be upon such person to show the time, place, and manner of his entry into the United States, but in present-

ing such proof he shall be entitled to the production of his visa or other entry document, if any, and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry in the custody of the Service. If such burden of proof is not sustained, such person shall be presumed to be in the United States in violation of law.

Respondent attempts to draw an analogy between the priliminary statement (Ex. 2) made by him and the preliminary interrogations in *Escobedo* v. *Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.ed. 2d 977 (1964), and *Massiah* v. *United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.ed. 2d 246 (1964), wherein it was held that an indicted defendant was entitled to the aid of counsel following interrogation by police in an extra-judicial proceeding. *Massiah* and *Escobedo* are criminal cases concerned with the admissibility of incriminating statements made by the defendants in absence of counsel and prior to trial. In *Massiah* the incriminating statement was obtained by a federal agent after indictment while the accused was free on bail. The accused in the *Escobedo* case made the incriminating statement during a police interrogation prior to indictment and after the police had denied his request to consult with his attorney. The police also failed to inform the accused of his right to remain silent. The convictions of both Massiah and Escobedo were reversed on constitutional grounds. It has been held repeatedly that immigration proceedings are civil rather than criminal, *Marcello* v. *Bonds*, 349 U.S. 302, 99 L.ed. 1107 (1955), and that the rules of evidence applicable in courts of law in criminal proceedings need not be followed. *U. S. ex rel. Impastato* v. *O'Rourke*, 211 F.2d 609 (8th Cir., 1954), and cases cited (cert. den. 348 U.S. 827).

All of counsel's arguments regarding the admissibility of Exhibit 2, the Government's burden of proof, and the complaints regarding fair hearing and due process were made and rejected in *Pereira* v. *Murff*, 169 F. Supp. 81 (D.C. N.Y., 1958), and *Vlisidis* v. *Holland*, 150 F. Supp. 678 (D.C. Pa., 1957). The latter case particularly briefs exhaustively the issues of the civil nature of deportation proceedings, adverse inferences from silence, and proof from official records. Pereira and Vlisidis were both alien seamen who jumped ship in the United States, who gave preliminary statements to immigrant inspectors, and who acquired counsel for hearings, following which they stood mute. On appeal they claimed that they had not been given due process and a fair hearing. *Vlisidis* quotes from *Williams* v. *Butterfield*, 145 F. Supp. 567 (D.C. Mich., 1956), as follows:

The concept of due process is, of course, applicable to such a proceeding, but it does not necessarily embrace judicial rules of evidence. The plaintiff was afforded a hearing before the proper administrative agency. He was given an

217

opportunity to testify and present evidence. He declined to exercise his right in this regard.

Respondent has not denied that he is an alien, nor has he asserted that he is lawfully in this country. To paraphrase *Vlisidis*, the alien who stands mute at his hearing stands in no better position than that of an alien who chooses to testify. Sooner or later he must show his right to stay in the United States, or he must depart.

The trial attorney for the Immigration and Naturalization Service offered in evidence the passport alleged to be respondent's, and containing some of the same information as that set forth in Exhibit 2. The special inquiry officer refused to accept the passport in evidence. In *Pereira* v. *Murff*, *supra*, this Board disregarded a passport offered under similar circumstances, but the court stated, "I find that the passport was also properly introduced into evidence". Since the special inquiry officer declined to admit the passport, of course, it is not in evidence here.

We find that the special inquiry officer's determination of deportability was based upon reasonable, substantial and probative evidence, and that respondent's assertions that the proceedings were improperly conducted, and that error was committed in the admission of evidence, are groundless. We find respondent to be an alien and deportable on the charge set forth in the order to show cause. The appeal will be dismissed.

ORDER: It is ordered that the appeal be and is hereby dismissed.