## MATTER OF ARGYROS

### In Section 246 Proceedings

### A-12042020

#### Decided by Board April 15, 1966

Where an alien answered affirmatively when asked by an officer of the Serv-. ice whether she was willing to make a sworn statement and whether she understood that any statement was to be made freely and voluntarily and might be used by the Government as evidence in any proceeding, such preliminary sworn statement by the alien was made voluntarily and not under duress; is admissible in evidence in rescission proceedings under section 246, Immigration and Nationality Act (8 CFR 246.3): and is not bound by the rules of evidence applicable to judicial proceedings, since rescission proceeding under section 246 are not within *Escobedo* v. *Illinois*, 378 U.S. 478. (1964).

This case is before us on appeal from a decision of a special inquiry officer dated May 10, 1965, rescinding the adjustment of status. previously granted to the respondent under section 245 of the Immigration and Nationality Act [8 U.S.C. 1255].

The respondent is a 36-year-old female, native and citizen of Greece, who entered the United States as a visitor on March 19, 1959. She married Michael Argyros, a United States citizen, on January 25, 1960, and he subsequently filed a visa petition on her behalf. This was approved by the Service, and she was accorded nonquota status. On May 17, 1960, the Service granted the respondent's application under 8 U.S.C. 1255, and her immigration status was adjusted to that of an alien lawfully admitted for permanent residence. On February 2, 1965, there was served on the respondent a letter dated December 21, 1964 which notified her concerning the intention of the Service to rescind, under 8 U.S.C. 1256, the adjustment of her immigration status. At the conclusion of the hearing which was thereafter granted, the special inquiry officer found that the respondent entered into a sham marriage with Michael Argyros solely for the purpose of evading the immigration laws. He concluded that she had not been eligible for the adjustment of status.

granted to her under 8 U.S.C. 1255 and entered the above-mentioned order of May 10, 1965 rescinding that action. The issue on this appeal is whether the special inquiry officer's action was correct.

We have carefully reviewed the entire record. The facts in this case are fully set forth in the special inquiry officer's decision. At the hearing (Tr. p. 2), the respondent admitted the first seven factual allegations in the letter of the Service dated December 21, 1964 which related to her alienage, arrival as a visitor, marriage, and the adjustment of her immigration status. The one matter that was not admitted was the allegation of the Service that she entered into a sham marriage with Michael Argyros solely for the purpose of evading the immigration laws.

The respondent was questioned under oath by Investigator Opolion of the Service on November 13, 1963. The stenotypist, Patrick J. Killela, was a witness at the hearing and read the respondent's statement of November 13, 1963 into the record from his original stenotype notes (Tr. pp. 139–201). The notes and transcript are Exhibits 11 and 16, respectively. Counsel attached to his brief a list of 31 instances in which there was a variation between that which appears in the transcript and that which appears in the stenotype notes. The special inquiry officer discussed this matter in his decision (pp. 41–43). It appears that Mr. Killela, in transcribing the notes on the day after the hearing before Mr. Opolion, inserted certain matters from memory which were not actually in his notes. The special inquiry officer stated that he would rely on the version of the questions and answers as they were read into the record of the hearing by Mr. Killela from his original notes rather than on the version contained in the transcript (Ex. 16). We have also used the version contained in the record of hearing rather than Exhibit 16. The differences between the two versions are relatively minor. Since the special inquiry officer and this Board have not relied on the disputed version contained in Exhibit 16, we will dismiss counsel's contention concerning this matter.

Part 246 of 8 CFR contains the regulations relating to rescission of adjustment of status under 8 U.S.C. 1256. 8 CFR 246.3 makes applicable certain other regulations including the procedure specified in 8 CFR 242.14(c) which is as follows: "The special inquiry officer may receive in evidence any oral or written statement which is material and relevant to any issue in the case previously made by the respondent or any other person during any investigation, examination, hearing, or trial." Hence, there is specific authority in the regulations for the special inquiry officer to consider, in this rescis-.

sion proceeding, the respondent's testimony on November 13, 1963.

Counsel has argued vigorously that the testimony of the respondent on November 13, 1963 is a "confession". We are unable to perceive why counsel deems this so important, and we consider it entirely immaterial whether this testimony of the respondent is characterized as a "confession" or "testimony" or in some other manner. The matter which is of consequence is whether the respondent's testimony on November 13, 1963 was properly admitted in evidence at the hearing. In urging that the respondent's "confession" of November 13, 1963 was inadmissible, counsel contends that it was involuntary; that she was not advised of the right to counsel; and that she was not advised of her right to remain silent (brief, pp. 24–36).

At the commencement of the formal examination on November 13, 1963, the respondent answered affirmatively when she was asked by the investigator whether she was willing to make a sworn statement and whether she understood that any statement was to be made freely and voluntarily and that it might be used by the Government as evidence against her in any proceeding. After careful consideration of the respondent's testimony at the hearing concerning the taking of the statement and the testimony of the investigators and the stenotypist, we are satisfied that the respondent's testimony on November 13, 1963 was given voluntarily and not under duress.

Counsel has placed considerable reliance on *Escobedo* v. *Illinois*, 378 U.S. 478 (1964). We discussed the same contentions in *Matter of Pang*, Int. Dec. No. 1479 (1965), and indicated why *Escobedo* was not controlling in a deportation proceeding. Similarly, we hold that *Escobedo* is not applicable in a rescission proceeding under 8 U.S.C. 1256. In his brief (p. 26), counsel indicated that any distinction between criminal proceedings and deportation proceedings had been "laid to rest with respect to coerced confessions", citing *Bong Youn Choy* v. *Barber*, 279 F.2d 642, 647 (9th Cir., 1960). Actually, that case did not represent any change in the law since it has never been considered that a deportation could be predicated on a confession or statement which had not been made freely and voluntarily. On the facts in the *Bong Youn Choy* case, the court found that he had been coerced into making the admissions; in this respondent's case, we have found that her testimony was given voluntarily and not under duress. Since the facts in the two cases differ, the *Bong Youn Choy* case is not controlling as to this respondent.

We have indicated above that counsel contended that, prior to the interrogation on November 13, 1963, the respondent should have been advised that she had a right to counsel and the right to remain silent. 8 CFR 246.1 contains a specific provision that the notice of intention to rescind shall inform the respondent that he [she] may be represented by counsel. The District Director's letter of December 21, 1964 (Ex. 1) did inform her concerning such representation. However, there was no requirement that she be specifically advised to that effect prior to the preliminary investigation on November 13, 1963 nor that she be informed that she could refuse to answer any questions. Nevertheless, she was advised that the statement was to be made freely and voluntarily which was at least some indication to her that she was not required to make any statement. We dismiss these contentions of counsel in accordance with our decisions in *Matter of F—*, 4 I. & N. Dec. 475 (1951); *Matter of P—*, 5 I. & N. Dec. 306 (1953); and *Matter of Pang, supra*. In addition, rules of evidence applicable in judicial proceedings need not be strictly followed in an immigration hearing. *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 157 (1923); *United States ex rel. Impastato v. O'Rourke*, 211 F.2d 609 (8th Cir., 1954), cert. den. 348 U.S. 827. In view of the foregoing, we conclude that the special inquiry officer was correct in admitting the respondent's testimony of November 13, 1963 in evidence.

Counsel has also contended that the "confession", if admissible, was not corroborated and was insufficient evidence, therefore, upon which to base the decision. In this connection, he has stated that in criminal cases the Government must introduce substantial evidence to establish the trustworthiness of the confession. However, this is not a criminal proceeding and it is well settled that an alien's own admissions are sufficient to support a deportation order. *United States ex rel. Bilokumsky v. Tod, supra; Schoeps v. Carmichael*, 177 F.2d 391 (9th Cir., 1949), cert. den. 339 U.S. 914. Similarly, we hold that the respondent's testimony of November 13, 1963 is a sufficient basis for rescinding the adjustment of status.

We have carefully considered the remaining contentions of counsel. These are without merit and do not require specific discussion.

When the respondent filed her application for adjustment of status under 8 U.S.C. 1255 on April 5, 1960, she stated that she had resided at 736 West 173rd Street, New York, New York, since January 1960. She filed her petition for naturalization on June 7, 1963 under 8 U.S.C. 1430(a) which required her to establish that during the preceding three years she had been living in marital union with

her citizen spouse. On the date the petition for naturalization was filed, she testified before the naturalization examiner that she was residing at 1 West 72nd Street, her place of employment; that she also maintained a residence at 736 West 173rd Street with her husband; and that there was no marital rift between them. It seems to be conceded that Michael Argyros had lived at 736 West 173rd Street prior to the marriage and continuously until 1964; that the respondent never lived at that address; and that, from the time of her arrival in 1959 until some time subsequent to June 7, 1963, she had lived at 1 West 72nd Street. In view of these false statements, which were obviously made for the purpose of concealing the fact that she and Michael Argyros were not living together, we do not consider the respondent a credible witness. It is our opinion that the respondent's admissions against interest in her testimony of November 13, 1963 constitute the true version of the facts and that her testimony at the hearing, insofar as it was to the contrary, must be rejected as self-serving statements which were untrue.

8 U.S.C. 1256 provides for the rescission of the adjustment of immigration status if "it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, * * *." One of the requirements for adjustment of status under 8 U.S.C. 1255 is that an immigrant visa must be immediately available. The respondent was classified as nonquota and was able to secure adjustment of her immigration status only by reason of her marriage. Otherwise, she would have been chargeable to the quota of Greece which was greatly oversubscribed on May 17, 1960 when her application for adjustment of status was granted.

On November 13, 1963, the respondent testified (Tr. pp. 156–174) to the effect that she met Michael Argyros through a Mr. Regas; that she agreed to pay Michael Argyros $500 if he would marry her; that she secured the money from her employer out of wages due her; that she gave the money to Mr. Regas who was to pay it to Michael Argyros; that she married Michael Argyros solely in order that she might remain in the United States; that she had no intention of living with him in a marital relationship; and that they never had sexual intercourse. Regas was questioned by investigators of the Service on November 13, 1963 (Ex. 21) and denied his involvement, stating that he knew nothing about the payment of $500 and did not see the respondent between the time of his first meeting with her in December 1959 and November 1960. On the basis of the respondent's own testimony, we believe the Service has

established that the respondent was not eligible for the adjustment of status granted to her on May 17, 1960.

In addition to the respondent's testimony, the following factors are pertinent. At the time of the marriage on January 25, 1960, the respondent was 29 years old and her husband was 60. George Spyropoulos, who was a witness at the marriage, testified (Tr. pp. 18-20) that $500 was paid to Michael Argyros as the inducement for marrying the respondent; that the money was paid in his presence by the respondent's "boy friend", a Mr. Regas; and that Michael Argyros informed him after the marriage that he had married the respondent only so that she could remain in the United States.

Michael Argyros executed an affidavit (Ex. 8) before an investigator of the Service on October 3, 1963 in which he stated that Regas introduced him to the respondent; that the respondent agreed to pay him (Argyros) $500 for marrying her; that she stated that they would not live together and that in a few months she would see a lawyer about obtaining a divorce; and that he (Argyros) was paid $500 by Regas which the latter had received from the respondent. The respondent was served with notice of this proceeding on February 2, 1965, and Argyros could not be presented as a witness since he had died on December 22, 1964. Although we held admissible in evidence *ex parte* affidavits of persons who died prior to the deportation hearing in *Matter of J—*, 6 I. & N. Dec. 496, 499 (1955), we have not relied on the affidavit of Michael Argyros in this proceeding.

During the oral argument, a contention was advanced by counsel for the Service that the respondent's statement of November 13, 1963 (Ex. 16) was taken in connection with the petition for naturalization which she had filed; that the proper procedure for the respondent's counsel would have been to take action in the naturalization court to quash the statement if he believed that there was a lack of due process; and that the question could not be raised collaterally in this rescission proceeding. Thereafter, both parties submitted briefs on this point. At the time of the interrogation on November 13, 1963, the respondent was advised that the proposed sworn statement related to her "presence in the United States" and nothing was said about her petition for naturalization (Tr. p. 139). In any event, we are not convinced that it would have been proper to dismiss the objections of the respondent's counsel on the technical ground suggested by the Service. We need not reach a definite conclusion concerning the matter since we have held above that the

respondent's testimony of November 13, 1963 was properly received in evidence.

In view of the foregoing, we conclude that the respondent's marriage to Michael Argyros was merely a sham marriage entered into for the sole purpose of enabling her to evade the quota restrictions; that she was not eligible for adjustment of her immigration status under 8 U.S.C. 1255; and that the special inquiry officer's action in rescinding the adjustment of status was correct. Accordingly, the respondent's appeal will be dismissed.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.