MATTER OF FUENTES-BLANCO

In Deportation Proceedings

A-14196901

*Decided by Board December 27, 1968*

Adjustment of status under section 245, Immigration and Nationality Act, as amended, is denied as a matter of discretion to applicant who entered this country with the preconceived intent to remain permanently, having withdrawn all of her savings when she came to the United States, having entered with a visitor's visa obtained from the American Consul in Mexico City upon concealment that she had previously been denied a visitor's visa by an American Consul in Chile, having traveled to the United States from Mexico on a one-way ticket, and within ten days after arrival here having applied for adjustment of status, having in her possession at entry her birth certificate and a certificate of good conduct, which are needed in support of an adjustment application.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant—visitor for pleasure—remained longer.

ON BEHALF OF RESPONDENT: Lloyd A. Tasoff, Esquire
408 South Spring Street
Los Angeles, California 90013
(Brief filed)

The proceedings are before us on appeal from the decision of the special inquiry officer who found respondent deportable as charged, denied her application for adjustment of status to that of a permanent resident under section 245 of the Immigration and Nationality Act, and granted her the privilege of voluntary departure with an alternate order of deportation to Chile in the event she did not depart as and when directed.

The respondent is a 35-year-old single female alien, a native and citizen of Chile, who entered the United States as a visitor for pleasure on or about November 14, 1964. She remained longer than permitted and in October 1967 the District Director, Los Angeles, granted her voluntary departure to January 11, 1967 in

lieu of the institution of deportation proceedings. She did not leave the United States.

The respondent admits the allegations of fact contained in the order to show cause and she concedes deportability. The sole question before us in this appeal is whether she is entitled to have her status adjusted to that of a permanent resident under section 245 of the Act. The special inquiry officer found that she was statutorily eligible for this relief but that it was denied as a matter of discretion.

The special inquiry officer found that when she entered the United States on or about November 14, 1964, being admitted on a visitor's visa obtained by her from the American consul in Mexico City on or about November 13, 1964, she had the preconceived intent of coming to the United States to remain here permanently as an immigrant. Thus, by this device of entering as a visitor she avoided having to meet the various qualifications for obtaining an immigrant visa. This being the case she was not entitled to the favorable exercise of the Attorney General's administrative discretion. With this conclusion we are in agreement.

The respondent's application for adjustment of status under section 245 of the Act was filed on December 5, 1964. Although natives of Western Hemisphere countries are ineligible to adjust their status in the United States after December 1, 1965 by reason of section 13 of the Act of October 3, 1965 (P.L. 89-236), section 3 of the Act of November 2, 1966 (P.L. 89-732), allows consideration of an application by a Western Hemisphere native if it was filed prior to December 1, 1965. Thus, respondent is eligible to have her application for adjustment considered at this time.

When the special inquiry officer denied the application for adjustment on January 18, 1968, that was the third time that the application had been rejected. It was originally denied by the District Director on July 27, 1965, and then after the proceedings were reopened upon motion and further consideration given to the application, it was again denied by the District Director on January 27, 1967.

The special inquiry officer has succinctly set forth in his decision the background facts relative to the respondent's entry into the United States and what transpired thereafter, and it is not necessary for us to repeat in detail these facts. However, we will state that the record shows that respondent applied for a visitor's visa in Santiago, Chile, which was denied by the American consul there on October 19, 1964 on the basis that she failed to present

proof that she was a bona fide tourist. She then purchased a round-trip airline ticket from Chile to Mexico and arrived in Mexico City during the first week in November 1964. Shortly thereafter, less than a month after having been denied a visitor's visa in Chile, she obtained such a visa from the American consul in Mexico City. She testified that she told the consul of the previous denial (Tr. of hearing p. 16). However, the consul advised the Immigration and Naturalization Service on December 21, 1965 that there was no evidence of record that the respondent had advised the consular officer at the time of interview that she had been denied a nonimmigrant visa in Santiago, Chile. He stated that the consular officer at the post would normally ask the applicant if he had ever been denied a visa in his home country, especially if he had just arrived (part of Ex. 4).

In connection with her application for adjustment, respondent was interviewed by an immigrant inspector on February 23, 1965, at which time, through an interpreter, she gave a sworn statement to the immigrant inspector (part of Ex. 4). The assertions contained in this sworn statement conflict with assertions made at the time of the deportation hearing regarding whether her intent when she entered the United States was to come here as a bona fide visitor or whether she intended to remain in the United States permanently. At the onset, counsel for respondent contends that it was improper and illegal to enter this sworn statement into the record because respondent was not informed of her right to have counsel at the time she gave it. However, pursuant to 8 CFR 242.14(c), any oral or written statement previously made by an alien during an investigation may be received in evidence by the special inquiry officer.[1] A statement made by an alien voluntarily and without counsel is admissible in deportation proceedings.[2] Failure to advise a respondent of the right to counsel at the time a preliminary sworn statement was voluntarily made does not render such statement inadmissible in evidence in deportation proceedings since there is no right to counsel during the taking of a statement in the investigative stage.[3] Respondent testified (Tr. of hearing, pp. 34 & 35) that the sworn state-

---

[1] *Shing Hang Tsui v. Immigration and Naturalization Service*, 389 F.2d 994 (1968).

[2] *Nason v. Immigration and Naturalization Service*, 370 F.2d 865 (1965); *Matter of Argyros*, 11 I. & N. Dec. 585; *Matter of Pang*, 11 I. & N. Dec. 213.

[3] *Nason v. Immigration and Naturalization Service*, supra; *Matter of Steele*, 12 I. & N. Dec. 302 (1967).

ment given by her on February 23, 1965 was freely and voluntarily given.

A careful reading of the sworn statement reveals that respondent hedged in many of her answers but that she finally admitted that at the time she came to the United States it was her intention to attempt to establish permanent residence (p. 5). This intention was denied by her at the deportation hearing. The special inquiry officer states in his decision (p. 8) that he did not believe that the respondent's belated self-serving clarifications offered during the hearing were credible, and he found that the respondent's testimony lacked candor and probity. The hearing officer enjoys an inestimable advantage of seeing and hearing the person testifying, and is in the best position to determine the accuracy, reliability and truthfulness of the testimony.[4]

We find that within ten days after arriving in the United States the respondent executed (on November 24, 1964) an application for adjustment of status under section 245 of the Act (Form I–485). She testified that this form was prepared by an immigration advisor, one Marie Lopez, and that an affidavit of support was executed by a husband and wife, citizens of the United States, on November 30, 1964. The application for adjustment was filed on December 5, 1964. It is to be noted that when the respondent traveled from Mexico City to Los Angeles she purchased only a one-way ticket, although she did testify that she intended to buy a return ticket in the United States. It is also to be noted that she applied for a visitor's visa to the United States in Mexico City after being there just a few days (p. 30 transcript of hearing).

Respondent further testified that when she came to the United States she withdrew all of her savings and that she had about $800 on her person when she arrived (pp. 29, 32). When she entered the United States she had with her a birth certificate and a certificate of good conduct, which of course are needed in applying for adjustment of status. She stated that her brother, who is a police officer in Chile, told her that she should have these documents with her when she traveled.

After a most careful consideration of the entire record, including the affidavit executed by respondent and the brief filed by counsel, we are of the opinion that this alien did come to the United States with a preconceived intent to remain permanently. We have held that even though a person is statutorily eligible for

---

[4] *Todaro v. Pederson*, 205 F. Supp. 612 (1961), aff'd 305 F.2d 377 (1962), cert. denied 371 U.S. 891 (1962); see also *Matter of T—*, 7 I. & N. Dec. 417.

the benefits of section 245, it will generally be denied as a matter of discretion to one who comes to the United States with a preconceived intention to remain here permanently.[5]

We have further held that adjustment of status under section 245 will be denied in the absence of particular equities.[6] There are no particular equities in this case which would justify the favorable exercise of administrative discretion, especially where, as in this case, it is quite clear that the respondent did evade the normal visa issuing function of the Department of State. Also, respondent's entire family resides in Chile and she has no family or relatives of any kind in the United States. The courts have held on a number of occasions that lack of family ties in the United States is alone a sufficient reason to deny adjustment of status under section 245.[7]

We will affirm the decision of the special inquiry officer to deny adjustment of status as a matter of discretion. Accordingly, the appeal will be dismissed.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.

---

[5] *Matter of Garcia-Castillo*, 10 I. & N. Dec. 516; *Matter of Azmitia*, 10 I. & N. Dec. 774; *Matter of Tonga*, 12 I. & N. Dec. 212; *Matter of Muslemi*, 12 I. & N. Dec. 249.

[6] *Matter of Leger*, 11 I. & N. Dec. 796; *Matter of Ramirez*, 12 I. & N. Dec. 78.

[7] *Kam Ng* v. *Pilliod*, 279 F.2d 207 (1961), cert. denied 365 U.S. 860 (1961); *Santos* v. *Immigration and Naturalization Service*, 375 F.2d 262 (1967).