MATTER OF SCAVO

In Deportation Proceedings

A–14809313

*Decided by Board April 10, 1973*

Respondent, encountered by service officers in May 1972, turned over his driver's license in response to a request for identification and thereafter fled. Following apprehension in November 1972, in a sworn statement made in the presence of his attorney and after a *Miranda* warning, he admitted entry as a stowaway. At the deportation hearing he stood mute. Held: There was nothing illegal about the May 1972 questioning; a *Miranda* warning was not required since respondent was not then in custody; and the driver's license obtained at the time of the May questioning is admissible in evidence. In any event, irrespective of the legality of the May questioning, respondent's November statement, made after a full warning as to his rights, constitutes independent, untainted, clear, convincing, and unequivocal evidence of deportability.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Stowaway—entered without inspection.

ON BEHALF OF RESPONDENT:
Joseph A. Gatto, Esquire
3280 Penobscot Building
Detroit, Michigan 48226
(Brief filed)

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

This is an appeal from an order of deportation entered by the special inquiry officer on December 4, 1972. We shall dismiss the appeal.

The respondent is a 39-year-old married male alien, a native and citizen of Italy. He is charged with entering the United States as a stowaway in 1966. An order to show cause in deportation proceedings was issued February 24, 1970 but could not then be served because the respondent could not be located. He was encountered by Service officers on May 31, 1972, at which time he turned over his driver's license (Exh. 4) in response to a request for identification. He then ran away. The respondent was not apprehended until November 9, 1972 at which time the order to show cause was served upon him. On November 10, 1972, in the presence of his

attorney, he made a sworn statement to Service officers admitting that he had entered the United States as a stowaway. At a deportation hearing conducted on November 28, 1972, the respondent stood mute. The November 10 statement was introduced and a finding of deportability was based thereon.

The respondent appeals on the ground that his motion to suppress the use of all the evidence introduced, including the November 10 statement, was improperly denied. The motion to suppress was based on the theory that the Service investigators should have advised the respondent of his constitutional rights, as set forth in *Miranda* v. *Arizona,* 384 U.S. 436 (1966), prior to questioning him in May 1972 as to his identity. Because of the lack of warnings, counsel characterizes the May questioning as an illegal arrest and illegal search and seizure, and the entire deportation proceeding, including all the evidence introduced, as fruit of the poisoned tree.

The respondent's theory lacks merit for several reasons, the most obvious of which is that there was no connection between the May 1972 questioning and the November 1972 statement, inasmuch as the respondent ran away from the Service investigators in May 1972 and was not found again until November 1972. The November statement was given in the presence of counsel, following warnings regarding the right to remain silent and the potential use against the respondent of any statement. The statement given in November, therefore, was in no way related to, or tainted by, the May questioning.

Secondly, counsel's attack on the deportation proceeding itself as illegal fruit of the poisoned tree is without merit. Evidence tainted by an illegal arrest or search and seizure may be suppressed but untainted evidence may be received.

Even if the arrest were illegal, the mere fact that the authorities got the "body" of Huerta-Cabrera illegally does not make the proceeding prosecuting him or deporting him the fruit of the poisoned tree ... (*Huerta-Cabrera* v. *INS,* 466 F.2d 759 (C.A. 7, 1972).

Thus, even assuming, arguendo, that the May confrontation resulted in respondent's temporary custody and that there was some defect in the manner in which he was then apprehended, the deportation hearing was not thereby rendered illegal. The evidence of deportability on which the decision rested was the respondent's November statement (Exh. 3). That statement was independent of, and untainted by, the May questioning.

Because the respondent stood mute at the deportation hearing, evidence was introduced to identify him as the subject of the proceedings. This evidence was the respondent's driver's license (Exh. 4), the records of prior bond proceedings (Exh. 5), and the

testimony of Service personnel who had interviewed him prior to the hearing.

Counsel contends that the admission of the driver's license was improper and makes the record fatally defective. Counsel objects to the admission of the driver's license on the ground that it was taken during an illegal arrest, illegal because the *Miranda* warnings were not administered prior to any questioning. However, we note that during oral argument before us counsel himself admitted that the Service investigators followed proper procedure when they obtained the driver's license:

> Chairman: ... the Immigration officer ... inquired of this man as to his identity. And this respondent produced his driver's license which contained his name, and that identified him. What was wrong with this procedure?
>
> Attorney: Nothing. Up to that point nothing was wrong. (Tr. of oral argument, p. 9)

In any event, since the driver's license is not a crucial piece of evidence in this case—even without it, the evidence in the record identifying the respondent is overwhelming—we need not further concern ourselves with its admissibility.

Moreover, there is no support in the cases for the proposition advanced by counsel that immigration officers must administer warnings as set forth in *Miranda* v. *Arizona, supra,* prior to any questioning. While some have held that there is no right to counsel during the taking of a statement in the investigative stage of an immigration proceeding,[1] and that, consequently, *Miranda* warnings need not be given because deportation proceedings are civil, not criminal, in nature,[2] we need not rely on that approach. It is clear in any event that the requirement of warnings applies only when the subject of the inquiry is in custody or is deprived of his freedom in a significant way, *Miranda* v. *Arizona, supra.* There is no showing in this record that the respondent was in custody or deprived of his freedom when questioned in May 1972.[3] In fact, he left the scene.

As for counsel's claim that the questioning constituted an illegal arrest, the record indicates that the questioning in May can be

---

[1] *Nason* v. *INS,* 370 F.2d 865 (C.A. 2, 1967); *Matter of Steele,* 12 I. & N. Dec. 302 (BIA, 1967).

[2] *Jolley* v. *INS,* 441 F.2d 1245, 1255 (C.A. 5, 1971), cert. den., 404 U.S. 946 (1971); *Matter of Lavoie,* 12 I. & N. Dec. 821 (BIA, 1968), aff'd *Lavoie* v. *INS,* 418 F.2d 732, 734 (C.A. 9, 1969), cert. den. 400 U.S. 854 (1970); *Matter of Pang,* 11 I. & N. Dec. 213 (BIA, 1965), aff'd *Ah Chiu Pang* v. *INS,* 368 F.2d 637 (C.A. 3, 1966), cert. den. 386 U.S. 1037 (1967).

[3] Counsel asserted at oral argument that a gun was "pulled" on the respondent but there is nothing in the record so indicating.

characterized neither as illegal nor as an arrest. Section 287(a)(1) of the Immigration and Nationality Act gives authority to officers of the Immigration and Naturalization Service to interrogate without a warrant any person believed to be an alien as to his right to be or remain in the United States. Such interrogation has been held not to constitute an arrest, *Yam Sang Kwai* v. *INS,* 411 F.2d 683 (D.C. Cir., 1969), cert. den. 396 U.S. 877 (1970); *Au Yi Lau* v. *INS,* 445 F.2d 217 (D.C. Cir., 1971), cert. den. 404 U.S. 864 (1971); *Cheung Tin Wong* v. *INS,* 468 F.2d 1123 (D.C. Cir., 1972). It may be deduced from these cases that mere detention for questioning does not constitute "custody," and, therefore, does not require that *Miranda* warnings be given before any questioning.

In view of the above, we conclude that there was nothing illegal about the May questioning or the obtaining of the respondent's driver's license, and that the special inquiry officer's finding of deportability was fully supported irrespective of the legality of the May questioning. The respondent's November statement, made after a full warning as to his rights, constituted independent, untainted, clear, convincing and unequivocal evidence of deportability. It was a voluntary statement against self-interest and admissible as such, *Matter of C—C—Y—,* 9 I & N. Dec. 225 (BIA, 1961); *Matter of P—,* 5 I. & N. Dec. 306 (BIA, 1953); *Schoeps* v. *Carmichael,* 177 F.2d 391 (C.A. 9, 1949), cert. den. 339 U.S. 914 (1950); *Gonzales* v. *Landon,* 215 F.2d 955 (C.A. 9, 1954).

The respondent did not apply for any relief from deportation.

**ORDER:** The appeal is dismissed.

329