MATTER OF EXANTUS AND PIERRE

In Deportation Proceedings

A–20420690

A–20420691

*Decided by Board November 7, 1977*

(1) When the authenticity of an affidavit, allegedly signed by the respondent, was challenged during the hearing, the immigration judge erred in not giving the Service an opportunity to present the Service officer who prepared the affidavit before admitting it into evidence.

(2) When the respondent submits an application for asylum persuant to articles 32 and 33 of the Convention Relating to the Status of Refugees during a deportation hearing, the immigration judge is required under applicable instructions to adjourn the hearing until after a decision on the asylum application has been rendered by the District Director.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered without inspection

| ON BEHALF OF RESPONDENTS: | ON BEHALF OF SERVICE: |
|---|---|
| Michael I. Rose, Esquire | George Indelicato |
| Suite 330 – Roberts Building | Appellate Trial Attorney |
| 28 West Flagler Street | |
| Miami, Florida 33130 | |

BY: Milhollan, Chairman; Wilson, Maniatis, Appleman, and Maguire, Board Members

The respondents appeal from a decision, dated October 15, 1976, in which the immigration judge found them deportable as charged, denied their applications for political asylum, withholding of deportation and voluntary departure, and ordered their deportation to Haiti. The record will be remanded.

The respondents were arrested by Service officers on August 11, 1976, and charged with being natives and citizens of Haiti who entered the United States without inspection on October 10, 1974. At a deportation hearing on August 19, 1976, the respondents, through counsel, refused to testify on the grounds that anything they said could be used against them in a possible criminal prosecution. Although the Service's trial attorney promised them immunity from prosecution, the respon-

dents continued to claim the Fifth Amendment privilege against self-incrimination.[1]

When it became apparent that the respondents would continue to refuse to testify or plead to the allegations in the Orders to Show Cause, the trial attorney requested that the proceedings be continued because the investigator who had arrested the respondents was unable to be present that day. The immigration judge denied this request and proceeded to accept into evidence affidavits allegedly signed by the respondents at the time of their arrest. One respondent denied signing the affidavit bearing his name, and the other respondent, after identifying his signature on the affidavit, stated that he could not understand English and he had no idea what he was signing. Thus, we find error in the immigration judge's admission of these affidavits without proper authentication.

In an earlier case, *Matter of Pang*, 11 I. & N. Dec. 213, 217 (BIA 1965), aff'd 368 F.2d 637 (3 Cir. 1966), we held that an affidavit, allegedly signed by the respondent, was properly admitted into evidence, but the investigator who had prepared the affidavit testified at the deportation hearing and the respondent in that case did identify his name. By contrast, in the case before us, the investigator who prepared the affidavits did not testify at the respondents' deportation hearing. In fact, the trial attorney on at least two occasions attempted to have the hearing continued in order to have the investigator testify (Tr. at 7–8 and 19–20). Thus, inasmuch as no witness testified as to the authenticity of the affidavits, they were improperly admitted.

The respondents' final argument concerns the immigration judge's denial of their applications for asylum pursuant to articles 32 and 33 of the Convention Relating to the Status of Refugees. The immigration judge apprently refused to review the evidence submitted in this regard or permit the respondents to call witnesses in their own behalf, until after they had testified themselves. Inasmuch as they refused to testify on Fifth Amendment grounds, the immigration judge denied their applications and ordered them deported to Haiti.

Pursuant to the Service's Operations Instructions, the hearing should have been adjourned until a decision on the asylum application was rendered by the District Director. Operations Instructions 242.13.[2] In his decision, the immigration judge considered the effect of the Opera-

---

[1] We note that the trial attorney has no apparent authority to promise immunity from prosecution in return for the respondent's agreement to testify. If the respondent refuses to testify, the District Director is authorized to request the United States Attorney to seek a court order compelling the repondent to respond and testify. See 8 C.F.R. 287.4(d); *Loufukis* v. *United States*, 81 F.2d 966 (3 Cir. 1936).

[2] Operations Instructions 242.13. *Aliens requesting asylum after issuance of an Order to Show Cause.* A hearing after issuance of an Order to Show Cause shall be

tions Instructions upon the published regulations. In particular, 8 C.F.R. 242.8(a) reads as follows:

Section 242.8 Special inquiry officers.

(a) Authority. In any proceeding conducted under this part the special inquiry officer shall have the authority to determine deportability and to make decisions, including orders of deportation as provided by section 242(b) of the Act; to consider claims for relief from deportation under Articles 32 and 33 of the Convention Relating to the Status of Refugees, as amended by the Protocol Relating to the Status of Refugees; to reinstate orders of deportation as provided by section 242(f) of the Act; to determine applications under sections 244, 245, and 249 of the Act; to determine the country to which an alien's deportation will be directed in accordance with section 243(a) of the Act; to order temporary withholding of deportation pursuant to section 243(h) of the Act, and to take any other action consistent with applicable provisions of law and regulation as may be appropriate to the disposition of the case. A special inquiry officer shall have authority to certify his decision in any case to the Board of Immigration Appeals when it involves an unusually complex or novel question of law or fact. Nothing contained in this part shall be construed to diminish the authority conferred on special inquiry officers by the Act.

The immigration judge found that the Operations Instructions conflicted with the above regulation and he concluded that the regulation should prevail. We, however, fail to see the conflict.

Although this regulation permits the immigration judge to rule on asylum requests under Articles 32 and 33 of the Convention Relating to the Status of Refugees, the Operations Instructions require that this request be first considered by the District Director. Operations Instructions 242.13. This is given the effect of a rule by 8 C.F.R. 108, wherein an alien is required to submit an application for asylum to the District Director having jurisdiction over his place of residence in the United States. The District Director is then required to request the views of the Department of State before making his decision. 8 C.F.R. 108.2. More importantly, a denial under this section does not preclude an alien, in a subsequent deportation hearing, from applying for the benefits of section 243(h) of the Immigration and Nationality Act and of Articles 32 and 33 of the Convention Relating to the Status of Refugees. 8 C.F.R. 108.2.

Thus, we fail to see the direct conflict between the regulation authorizing the immigration judge to consider claims of asylum, 8 CFR. 242.8, and the Operations Instructions 108.1(f)(c) and 242.13. The regulations do not grant aliens the right to have their asylum requests considered solely by the immigration judge when they are requested during the course of a deportation proceeding. We hold that 8 C.F.R. 242.8 merely grants the immigration judge the authority to entertain such requests. Under Operations Instructions 242.13 the immigration

deferred pending disposition of a request for asylum. Any such request shall be processed pursuant to Operations Instructions 108.1(f).

judge is required to adjourn the deportation proceedings until after a decision has been rendered on the asylum request by the District Director.

Inasmuch as the District Director has not yet rendered a decision on the respondents' request for asylum, the immigration judge improperly considered the matter. Therefore, we need not consider whether his decision to deny the request was merited. Accordingly, the record will be remanded to permit the respondents' application for asylum to be adjudicated by the District Director.

ORDER: The record is remanded to the immigration judge for further proceedings consistent with the foregoing opinion and the entry of a new decision.